IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| **Chris A. Yeager**, | ) | Civil Action No. 9:09-860-MBS |
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| **Allstate Insurance Company**, | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant Allstate Insurance Company's ("Allstate" or "Defendant") motion to dismiss and the parties' cross-motions for summary judgment. This case involves a dispute regarding whether Georgia or South Carolina law should determine whether a Georgia automobile insurance policy provides uninsured motorist coverage for an automobile accident that occurred in South Carolina. For the reasons set forth herein, the court grants Defendant's motion for summary judgment, denies Plaintiff Chris Yeager's ("Plaintiff") motion for summary judgment, and dismisses Defendant's motion to dismiss as moot.

I. **Background**

On January 17, 2006, Plaintiff was involved in an automobile accident with an automobile driven by William Sillers ("Sillers") in Bluffton, South Carolina. At the time of the accident, Sillers was insured by an automobile insurance policy issued by State Farm with a $100,000 per person liability limit. Plaintiff was insured by an automobile insurance policy issued by Allstate (the "policy"), which was purchased, issued, and delivered in Georgia. The policy insures two automobiles owned by Plaintiff, including the automobile involved in the accident, and provides uninsured motorist coverage of $100,000 per person.

1

The policy includes the following choice of law provisions:

What Law Will Apply
This policy is issued in accordance with the laws of Georgia and covers property or risks principally located in Georgia. Subject to the following paragraph, any and all claims or disputes in any way related to this policy shall be governed by the laws of Georgia.

If a covered loss to the auto, auto accident, or any other occurrence for which coverage applies under this policy happens outside Georgia, claims or disputes regarding that covered loss to the auto, covered accident, or other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to the auto, covered auto accident, or other covered occurrence happened.

Where Lawsuits May Be Brought
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard, and decided only in a state or federal court located in Georgia.

If a covered loss to the auto, auto accident, or any other occurrence for which coverage applies under this policy happens outside Georgia, lawsuits regarding that covered loss to the auto, auto accident, or any other covered occurrence may also be brought in the judicial district where that covered loss to the auto, covered auto accident, or other covered occurrence happened.[1]

At the time of the accident, Plaintiff was a Georgia resident and held a Georgia driver's license. The automobile Plaintiff was driving at the time of the accident was registered in Georgia. Plaintiff avers that at the time of the accident she was living part-time in Hilton Head, South Carolina with her boyfriend, Roy Wooster, and conducting business as a bookkeeper for clients in Beaufort County, South Carolina.[2] Plaintiff avers that the accident occurred while she was driving from a client's place of business in Beaufort County, South Carolina to her part-time residence in

---

[1] See The Policy, 24-25, attached as Exhibit A to Plaintiff's Motion for Summary Judgment.

[2] See Exhibit B of Plaintiff's Motion for Summary Judgment, ¶¶ 4-5, Affidavit of Chris Yeager; also see Exhibit B of Plaintiff's Motion for Summary Judgment, ¶¶ 2-3, Affidavit of Roy Wooster, ¶¶ 2-3, Affidavit of Peter Feldman.

2

Hilton Head, South Carolina.[3] Plaintiff further avers that she filed Georgia and South Carolina state income tax returns in 2005, 2006, and 2007.[4] Following the accident, Plaintiff received medical treatment in Georgia and South Carolina. The automobile Plaintiff was driving at the time of the accident was repaired by a mechanic in Savannah, Georgia.

Plaintiff filed suit against Sillers and subsequently settled her claim against him for $100,000. Because Plaintiff's medical bills were in excess of $65,000 and her damages exceeded $100,000, Plaintiff submitted a claim for uninsured motorist coverage to Allstate seeking an additional $200,000 for her injuries and damages. Defendant denied Plaintiff's claim, arguing that the policy does not provide uninsured motorist coverage in instances where the at-fault automobile had liability limits equal to the limits of Plaintiff's uninsured motorist coverage. Soon after, Plaintiff filed this declaratory relief action. Defendant moved to dismiss Plaintiff's complaint, and both parties subsequently filed cross-motions for summary judgment.

The parties dispute whether Plaintiff is entitled to uninsured motorist coverage under the policy. Underlying the parties' dispute is a choice of law issue. The parties agree that South Carolina choice of law rules must determine which state law governs the parties' dispute. However, the parties disagree about whether South Carolina choice of law rules require applying South Carolina or Georgia uninsured motorist law. Uninsured motorist coverage in South Carolina and Georgia are based on two distinct models. Georgia is a "reduction" or "limits-to-limits" coverage[5]

---

[3] See Affidavit of Chris Yeager at ¶ 3.

[4] See Affidavit of Chris Yeager at ¶ 6.

[5] "Reduction" uninsured motorist coverage provides benefits to an insured under his or her own policy only when the claimant's uninsured motorist coverage is greater than the at fault driver's liability coverage because the amount of recovery from the claimant's uninsured motorist coverage is reduced by the amount of recovery from the at fault

3

state and South Carolina is an "excess" or "limits-to-damages" coverage[6] state.

Plaintiff's position is that under South Carolina choice of law rules, South Carolina uninsured motorist law should govern because Plaintiff has significant contacts and relationships in South Carolina. Defendant's position is that under South Carolina choice of law rules, Georgia Uninsured motorist law should govern because Plaintiff is a long-time citizen and resident of Georgia, the automobile involved in the accident was registered and insured in Georgia, and the policy was issued, purchased, and delivered in Georgia. In Defendant's view, Plaintiff's contacts with South Carolina are not significant enough to warrant the application of South Carolina uninsured motorist law.

## II. <u>Summary Judgment Standard</u>

Summary judgment should be granted only in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. <u>McKinney v. Bd. of Trustees of Maryland Cmty. College</u>, 955 F.2d 924, 928 (4th Cir. 1992). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

---

motorist.

[6] "Excess" uninsured motorist coverage provides benefits to an insured under his or her own policy at any time the at fault driver's liability coverage is less than the amount of the claimant's actual damages. The claimant is entitled to benefits equal to the difference between his actual damages and the at fault driver's limits up to the claimant's own uninsured motorist limits.

a matter of law." Fed. R. Civ. P. 56(c) The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). An issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit under the governing substantive law. Anderson, 477 U.S. at 248.

The moving party bears the burden of proving that there are no facts from which a jury could draw inferences favorable to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party makes this showing, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. Id. The nonmoving party may not rest on his pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. See Celotex, 477 U.S. at 324. Mere speculation cannot stave off a properly supported motion for summary judgment. See Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). As the Anderson Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

**III.    Discussion**

At issue in this case is whether Plaintiff is entitled to uninsured motorist coverage under an automobile insurance policy issued by Defendant. Resolution of this issue hinges on whether South Carolina or Georgia uninsured motorist law governs. Because this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, the court must apply the choice of law rules of the state in which it is located. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); see also Bowman v. The Continental Ins. Co., 229 F.3d 1141 (4th Cir. 2000). Thus, the court must look to South Carolina choice of law rules to determine whether South Carolina or Georgia uninsured motorist law

governs.

Historically, the governing choice of law rule applied by South Carolina courts was the rule of *lex loci contractus*, which requires applying the law of the state where the contract was formed. See Auto-Owners Insurance Co. v. Sarata, 33 F. App'x. 675, 677 n.1 (4th Cir. 2002); see also Heslin-Kim v. Cigna Group Ins., 377 F. Supp. 2d. 527, 530 (D.S.C. 2005). Following the enactment of S.C. Code Ann. § 38-61-10 in 1947, courts limited the rule of *lex loci contractus* to only those cases where § 38-61-10 is not applicable. See Heslin-Kim, 377 F. Supp. 2d. at 531 n. 6 (noting that "[i]f 38-61-10 does not apply to an insurance coverage dispute, the court must then determine choice of law through the doctrine of *lex loci contractus*").

S.C. Code Ann. § 38-61-10 provides that

> [a]ll contracts of insurance on property, lives, or interests, in this State are considered to be made in the State and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

The applicability of § 38-61-10 was discussed at length in Heslin-Kim. There, the court was asked to determine whether Georgia or South Carolina law governed a life insurance policy. The court held that § 38-61-10 was applicable because the "life" insured by the policy had a "permanent and definitive connection" to South Carolina since the deceased died in South Carolina, permanently resided in South Carolina for seven years before his death, paid his insurance premiums from South Carolina, and had an estate that was probated in South Carolina. In so holding, the court stated the following principles regarding § 38-61-10:

> Under [§ 38-61-10] it is immaterial where the contract was entered into . . . what is solely relevant is where the property, lives, or interests insured are located.
> . . .

6

> First, the **plain language of § 38-61-10 contemplates a broad application of South Carolina law to insurance contracts with any significant connection to South Carolina.** The court is bound by the plain meaning of the statute's language. Moreover, Sangamo explicitly embraced a broad reading of § 38-61-10's applicability. Finally, and perhaps most importantly, neither the South Carolina Court in Sangamo nor the statute emphasize location of property or lives upon inception of the insurance contract. Rather, both emphasize only the general location of property, lives, and interests within the state . . . . South Carolina's broad jurisdiction over an insurance contract is triggered by the location of the property, lives, and interests within the state, not the entrance into an insurance contract.
> 
> . . .
> 
> The court next considers whether applying the code in the matter *sub judice* is unconstitutional. For a state's substantive law to be selected consistent with the Full Faith and Credit Clause and the Due Process Clause, the **state must have a significant contact** or **significant aggregation of contacts**, creating state interest, so that the choice of its law is neither arbitrary [n]or fundamentally unfair.

377 F. Supp. 2d. at 531-33 (emphasis added) (internal citations and quotations omitted).[7]

In cases where courts have held that § 38-61-10 is inapplicable, the courts determined that there was "a lack of connection, interest or nexus to South Carolina," such that it could not be said that the "property, lives, or interests" insured were located in South Carolina. See Cigna, 377 F. Supp. 2d. at 532; see also Bowman, 229 F.3d at *3 (finding that § 38-61-10 was not applicable to an insurance coverage dispute because at the time of the automobile accident the insured person and property were located in Georgia and the insured's sole connection with South Carolina was the automobile accident); Yeager v. Maryland Casualty Co., 868 F. Supp. 141, 144 n.5 (D.S.C. 1994)

---

[7] In Sangamo Weston v. National Surety Corporation, 414 S.E.2d 127 (S.C. 1992), the Supreme Court of South Carolina held that § 38-61-10 was applicable in a case where a manufacturing plant, which was the subject of the insurance contract in issue, was physically located in South Carolina.

(finding that § 38-61-10 was not applicable to an insurance coverage dispute where there were no "interests" in South Carolina); Unisun Ins. Co. v. Hertz Rental Co., 436 S.E.2d 182, 184 (S.C. 1993) (applying the rule of *lex loci contractus* after finding that § 38-61-10 was not applicable in a case where the property and interests insured were located outside of South Carolina at the time the contract was made).

In the present case, the court must first determine whether § 38-61-10 or the traditional rule of *lex loci contractus* applies. If the former applies, South Carolina uninsured motorist law governs. If the latter applies, Georgia uninsured motorist law governs. Under § 38-61-10 the relevant question is whether the "property, lives, or interests" insured by the insurance policy are located in South Carolina. To answer this question, Sangamo and Heslin-Kim require that this court interpret § 38-61-10 broadly and determine whether there is a significant connection between the subject of the insurance contract and South Carolina.

In this case, the insurance policy provides coverage for bodily injury and property damage to Plaintiff's vehicle. At the time of the accident, Plaintiff's connections to South Carolina included the following: Plaintiff was residing part-time in South Carolina at her boyfriend's residence; Plaintiff was working as a bookkeeper for clients in South Carolina; Plaintiff was driving from a client's business in Beaufort County, South Carolina to Plaintiff's part-time residence in Hilton Head, South Carolina when the accident occurred; Plaintiff was filing South Carolina income tax returns.

Plaintiff's connection to South Carolina is more significant than the plaintiffs' connections in Bowman and Maryland Casualty Co., where the courts applied the rule of *lex loci contractus* after determining that S.C. Code Ann. § 38-61-10 was not applicable. In each of those cases, the plaintiff's

sole connection to South Carolina was the automobile accident that occurred in South Carolina. See Bowman, 229 F.3d at *3; Maryland Casualty Co., 868 F. Supp. at 144 n.5. In this case, the automobile accident is not Plaintiff's sole connection to South Carolina.

However, Plaintiff's connection to South Carolina is not as significant as the plaintiffs' connections in Sangamo and Heslin-Kim, where the courts held that S.C. Code Ann. § 38-61-10 was applicable. In Sangamo, the "property" insured under the contract--a manufacturing plant--was physically located in South Carolina. See Sangamo, 414 S.E.2d at 130. In that case, there was no doubt that the subject of the insurance contract was "located" in South Carolina. Here, Plaintiff's automobile, was physically located in South Carolina at the time of the accident, but the automobile was registered to Plaintiff's permanent address in Georgia. In Heslin-Kim, the "life" insured by the policy--the deceased insured--died in South Carolina, had been a longtime resident of South Carolina, had his estate probated in South Carolina, and therefore had a "permanent and definitive connection" to South Carolina. See Heslin-Kim, 377 F. Supp. 2d. at 532. Here, Plaintiff's connection to South Carolina does not share the same degree of permanency as the plaintiffs' connections in Sangamo and Heslin-Kim. Although Plaintiff resided in South Carolina part-time and paid South Carolina income taxes, Plaintiff was a permanent resident of Georgia, Plaintiff held a Georgia driver's license, and the insured automobile was registered in Georgia.

Pursuant to § 38-61-10 and the cases interpreting that statute, the court finds that Plaintiff's connection to South Carolina is not significant enough to trigger application of § 38-61-10. Accordingly, the rule of *lex loci contractus* controls as the choice of law rule in this case. The rule of *lex loci contractus* requires applying the law of the state where the contract was formed. In this case, the contract was formed in Georgia. Therefore, Georgia's uninsured motorist law governs the

dispute in this case.

Under the clear language of the policy and O.C.G.A. § 33-7-11(b)(1)(D)(ii), an at-fault driver is not considered "uninsured" or "underinsured" if his liability limits are equal to the limits of the Plaintiff's uninsured coverage. Here, the at-fault driver's liability coverage of $100,000 is equal to Plaintiff's uninsured coverage of $100,000 under the policy. Because Plaintiff settled her claim with Sillers for $100,000, Plaintiff is not entitled to uninsured motorist coverage under the policy and Georgia law.

**IV.   Conclusion**

For these reasons, Defendant's motion for summary judgment is **GRANTED**, Plaintiff's motion for summary judgment is **DENIED**, and Defendant's motion to dismiss is dismissed as **MOOT.**

**IT IS ORDERED**.

s/Margaret B. Seymour  
United States District Judge

February 22, 2010  
Columbia, South Carolina